HALL *et al. v.* MAYOR AND COUNCIL OF CALHOUN.

</div>

ATKINSON, J. 1. The provisions in the charter of the town of Calhoun (Acts 1895, p. 145), that the municipality shall have perpetual succession, shall have power and authority to make, ordain, and establish, from time to time, such by-laws, ordinances, resolutions, rules, and regulations as shall appear to them to be necessary and proper for the good government, security, welfare, and interest of the said town of Calhoun and the inhabitants thereof, and for preserving the health, morals, peace, and good order of the same, not in conflict with the constitution and laws of this State, and shall have power and authority in and by said corporate name to contract and to be contracted with, to sue and be sued, to plead and be impleaded in any of the courts of this State, to have and use a common seal, to hold all property real and personal, now belonging to said town, for the purposes and interest for which the same was granted or dedicated, to acquire by gift or purchase such real or personal property as may hereafter be deemed necessary and proper for corporate purposes, and to use, manage, improve, sell, convey, rent, or lease any or all of said property as may be deemed advisable for the corporate interest, were sufficient to authorize the municipality to establish and construct a system of waterworks. *Mayor &c. of Rome* v. *Cabot,* 28 *Ga.* 50, *Heilbron* v. *Mayor &c. of Cuthbert,* 96 *Ga.* 312 (23 S. E. 296).

(*a*) The municipality having charter power to establish and construct a system of waterworks, where necessary to go beyond the corporate limits to obtain its supply of water, it was not ultra vires of the corporation to enter into the contract mentioned in the statement of facts. *Langley* v. *City Council of Augusta,* 118 *Ga.* 590 (45 S. E. 486, 98 Am. St. R. 133). See also *City of Quitman* v. *Jelks & McLeod,* 139 *Ga.* 238 (77 S. E. 76).

(*b*) The ruling in *Loyd* v. *Columbus,* 90 *Ga.* 20 (15 S. E. 818), which was criticised and doubted in *Langley* v. *Augusta,* supra, will not be extended.

(c) It follows that the contract between Hall and the municipality could not be canceled on the ground that it was ultra vires of the corporation.

2. The contract was not subject to be canceled on the ground that it was void for the want of consideration. It recited a consideration. *Nathans v. Arkwright,* 66 *Ga.* 179; *Martin* v. *White,* 115 *Ga.* 866 (42 S. E. 279). And the grantor received water from the municipality, and the latter expended money in making water connections for the grantor in accordance with the terms of the contract. *Atlanta & West Point Railroad Co.* v. *Camp,* 130 *Ga.* 1 (60 S. E. 177, 15 L. R. A. (N. S.) 594, 124 Am. St. R. 151, 14 Ann. Cas. 439).

3. Properly construed, the municipality acquired by the contract the right to the reasonable use of the water, notwithstanding such use might operate to the detriment of the "fish-pond."

4. The right of the grantor to use water supplied by the municipality free of charge, by express terms of the contract, was not assignable.

5. The case differs from that of *Horkan* v. *City of Moultrie,* 136 *Ga.* 561 (71 S. E. 785), where an effort was made to compel a city to furnish water "free of charge" for an indefinite time under an agreement by the municipal council for that purpose, though made for a consideration; and from *Tarver* v. *Mayor &c. of Dalton,* 134 *Ga.* 462 (67 S. E. 929, 29 L. R. A. (N. S.) 183, 20 Ann. Cas. 281), where a contract by a municipal corporation not to collect taxes on certain property in excess of a specified amount was involved.

6. There was no error in overruling the plaintiff's motion for new trial.

*Judgment affirmed.    All the Justices concur.*

SEPTEMBER 26, 1913.

Equitable petition. Before Judge Fite. Gordon superior court. August 5, 1912.

H. L. Hall owned a spring near the town of Calhoun, Georgia. The municipal authorities of Calhoun decided to establish a system of waterworks, to be supplied in part with water from the spring. The parties mentioned, on June 13, 1898, entered into and signed a written contract under seal, witnessed as a deed, which, after making in substance the above recitals, set forth the following in effect: the municipality should pay for the plumbing necessary to convey the water from the main nearest Hall's residence into any room of his house, or place on his lot designated by him, with the right to him at his own expense to make other connections, not exceeding four, for the purpose of furnishing water on his own premises; the town to allow him, without any right of alienation, to use the town water free of charge so long as the waterworks should be maintained and operated, and its water supply obtained from the spring. In consideration of such agreement by the town, and ten dollars in hand paid, the receipt of which was acknowledged, Hall conveyed to the town the right to use water for the purpose of

supplying the suction basin constructed, or to be constructed, on the "Pauper Farm" premises near thereto, of the spring known as "Hall's Fish Pond Spring," located about one mile north or northeast of the court-house in Calhoun, and other springs on his said premises, near to and west of the aforesaid "Pond" spring, together with privileges and rights to drain, improve, and lay pipes to the same through his premises, in such way as to safely, cheaply, conveniently, and advantageously use and convey water from said springs to said suction basin; provided, however, that this utilization or use of the water from the "Pond Spring" shall be done without impairments or damage other than by running pipe under or through said dam, if pond-water be used, with valves to prevent flow, except when required for filling the suction basin otherwise, and with the spring or springs on premises of Hall, from which it may be desirable to use water. The municipal authorities "are hereby authorized to make such improvements as they shall deem necessary or essential to the full, complete, thorough and healthful use and enjoyment of water therefrom to and for the purpose of supplying the town of Calhoun and the inhabitants thereof with water, through the system of waterworks being established and constructed." After describing what the grantor undertook to convey, the contract proceeded thus: "To have and to hold the said rights and privileges and uses, etc., in and to the water, the spring, ways for the pipe drainage and improvements thereof, [unto] the said parties of the first part, their successors and assigns, to and for the uses and purposes aforesaid, and for the consideration aforesaid, without reservation by the said party of the second part, his heirs or assigns, of any rights by alienation, by adulteration, or any system of drainage, or in any other way to prevent the full and free use and enjoyment of the water from the said springs, as herein described and contemplated, so long as said system of waterworks is maintained. And said parties of the first part hereby promise and agree to perform, stand by, and abide the obligations herein imposed and assumed by them."

After the town had constructed its waterworks, connected H. L. Hall's residence therewith, and furnished water to him under the contract for a number of years, he sold the land, which embraced the spring and fish-pond (which derived its supply of water from the spring), to G. A. Hall and J. A. Hall. Subsequently, in Au-

gust, 1911, the purchasers instituted suit against the town to cancel the contract and enjoin diversion of the spring water from the fish-pond, to the detriment of the latter, and from using certain pipes which the town had laid through plaintiffs' lands, and to compel the town to remove its property from the land. Plaintiffs, being dissatisfied with the result, made a motion for new trial on the general grounds, and excepted to the judgment overruling the motion.

*T. W. Skelly* and *Maddox, McCamy & Shumate,* for plaintiffs.
*Neel & Neel, J. G. B. Erwin,* and *O. N. Starr,* for defendant.