S. M. BERNARD *v.* THE CITY OF BLUEFIELD *et al.*

Submitted May 14, 1936.   Decided May 19, 1936.

(Opinion filed June 9, 1936)

*French & Easley,* for plaintiff.
*Richardson & Kemper,* for defendants.

WOODS, JUDGE:

F. M. Bernard filed his bill of complaint in the Circuit Court of Mercer County against the City of Bluefield, West Virginia, W. A. Light, Walter Perkins, C. W. Godsey, P. T. Sanders and Thomas H. Settle, individually and as Mayor and members of the board of directors of that city, and W. A. Light, George Dunglinson, Jr., and E. G. Otey as members of its sanitary board, praying for an injunction restraining the defendants and each of them from further action in connection with the acquiring of a site and the building of an outfall sewer and sewage disposal plant at Bluestone River in the town of Bluefield, Virginia. The bill sets out in detail the proceedings by which the defendants are undertaking to issue revenue bonds in the amount of $244,000.00, said bonds to be retired over a period of thirty years from revenue derived solely from assessments to be levied against the citizens of said city, apportioned according to the use made by them of the plant to be constructed, the city, as such, not to be obligated in any manner to pay the bonds. It is alleged that the governing body of the City of Bluefield has created a sanitary board as authorized by chapter 25 of the Acts of the First Extraordinary Session of 1933, as amended by chapter 48 of the Acts of the Second Extraordinary Session of 1933, and that, pursuant to proper proceedings under that act,

the governing body of the City of Bluefield is about to issue the bonds in question. It is further alleged that the governing body of the City of Bluefield intends to incorporate the sanitary board as a non-stock corporation under the laws of this state to have it domesticated under the laws of the State of Virginia, and, as such corporation authorized to do business in the latter state, to contract with the town of Bluefield, Virginia, for the use by the citizens of that town of the sewage disposal plant to be erected by the City of Bluefield at Bluestone River within the State of Virginia. The bill of complaint asserts, first, that there is no authority in law for the City of Bluefield to cross the state line and erect a sewage disposal plant in the State of Virginia; and second, that there is no authority in law for the governing body of the City of Bluefield to incorporate its sanitary board, have that corporation domesticated in the State of Virginia and contract with the town of Bluefield, Virginia, for the use by its citizens of the sewage disposal plant to be erected. Based upon these propositions, the bill of complaint seeks to enjoin the erection of the plant in Virginia and the issuance of the bonds.

The case was heard upon application for an injunction upon the bill of complaint, the answer of the defendants and the exhibits and supporting affidavits accompanying those papers. Upon the applicaton in the Circuit Court of Mercer County, the injunction was refused, and, upon the record certified from that court, the application for the injunction was here made.

There are two main questions raised in the case. First, can the City of Bluefield erect a sewage disposal plant in the State of Virginia? Second, can that city incorporate its sanitary board and by that means pursue the course of action above indicated?

Chapter 25 of the Acts of the First Extraordinary Session of 1933 confers upon the municipalities of the state, acting by and through a sanitary board in the manner provided in that chapter, the power to acquire, construct, equip, operate and maintain within or without

the corporate limits of such municipal corporation, plants such as the one in question. The act further provides that for all of the purposes thereof, the municipal corporations shall have jurisdiction for ten miles outside their corporate limits. It will thus be seen that for all the purposes of the act and for all of the matters that are before us in this case, the legislature has conferred upon the City of Bluefield extra territorial powers extending ten miles beyond its corporate limits. According to the showing here, all that is contemplated to be done is to be done well within that distance of the corporate limits of the City of Bluefield.

The next question, then, is whether those powers are restricted to territory of the State of West Virginia. We think it is inescapable, in view of the large number of border towns in the State of West Virginia whose sewage disposal problem of sheer necessity may, and of practical convenience certainly would, involve the territory of other states, to conclude that by the terms of this act, the legislature intended, insofar as it could, to confer upon such municipalities as might find its exercise convenient, the right to make necessary and appropriate arrangements for the disposal of their sewage even where that course involved the use of territory in an adjoining state. Assuming then that the legislature of West Virginia intended by the act in question to give to municipalities of the state the right, within ten miles of their corporate limits to arrange for the use of the territory of adjoining states, the question remains whether such a grant of power would have validity. It is at once apparent that with reference to any governmental powers, a grant from the legislature of this state to a municipality of this state of any rights or powers affecting the territory of an adjoining state would be but an impotent effort to extend the territorial sovereignty of this state and to involve and invade the territorial sovereignty of an adjoining state. But it is well recognized that municipalities do not exist solely for the purpose of exercising governmental powers. This

distinction has been raised and recognized in the few cases in this country which involve the extra territorial exercise of powers by municipalities outside the state of their creation. In the case of *Langdon* v. *City of Walla Walla*, 112 Wash. 446, 193 Pac. 1, the question of the right of a municipality to acquire property for the purpose of erecting a water works beyond the limits of the state of its creation was squarely before the Supreme Court of the State of Washington. The right was there sustained in a well-reasoned opinion. In *Superior Water, Light & Power Co.* v. *The City of Superior*, 174 Wis. 257, 181 N. W. 113, 183 N. W. 254, the right of the city to acquire a water works plant, a part of which lay beyond the state line, was sustained. The discussions and holdings in both of these cases seem to proceed along the theory that the right to be exercised outside the territorial jurisdiction of the state creating the municipality is a proprietary, as distinguished from a governmental right. In both cases, the right of eminent domain is discussed. The former case reasons that since the right of eminent domain may be by a state conferred upon a foreign corporation, it may be conferred upon a foreign municipality, and since this is so, that the proprietary right of a municipality may well extend beyond the state line of the state creating it. The latter case concludes that since courts of equity may exercise certain powers, such as ordering the foreclosure of mortgages upon property partly within and partly without the state of the court rendering the decree, the proprietary right of a municipal corporation may exist beyond the bounds of the state of its creation as an incident to the exercise of a like power in condemnation cases. Without impugning the soundness of the reasoning of either of these cases, it would seem that necessity or impelling convenience is really the true basis of decision. To hold otherwise would be to fatally impair and restrict the development of towns and cities throughout the country that are situated on or near state borders. The streams and rivers of the country, so indispensable both to the supply

of water and to sewage disposal, form the natural boundaries between many of our states. Town and cities, as in this case, have grown up with state boundaries running through them. In the case before us, the necessity is demonstrated by the pleadings. The City of Bluefield lies upon a high plateau or water shed. Bluestone River is the only sizeable stream available to it for sewage disposal. There is no point at which that river within the State of West Virginia is practically accessible to the City of Bluefield, West Virginia, for that purpose. For more than twenty years, by a reciprocal arrangement with the town of Bluefield, Virginia, the sewage of the the City of Bluefield, West Virginia, has been disposed of at a point in that river situated in the State of Virginia. The present situation has become, from a sanitary standpoint, well nigh intolerable, particularly to the citizens of the town of Bluefield, Virginia. It constitutes a growing menace to public health, and its only practical solution appears to be by some plan embracing the elements of the one that is before us. The pleadings show that the necessary arrangements and undertakings with the town of Bluefield, Virginia, to permit the plan to be carried into execution, have been made. The pleadings further set out a plan by which the matter may be carried into execution in conformity with the laws of the State of Virginia. In the light of the fact that we are of the opinion that the legislature of West Virginia, to the full extent that it may do so, has granted to the City of Bluefield, West Virginia, all of the powers essential to put the plan into execution, and further, that the plan may be executed under and in conformity with the laws of the State of Virginia, and to the ordinances and with the agreement of the town of Bluefield, Virginia, we see no legal barrier to its approval by this court.

A more serious difficulty is involved in the admitted proposal to incorporate as a non-stock corporation in this state, the sanitary board created by the governing body of the City of Bluefield, in conformity with Chapter 25 of the Acts of the First Extraordinary Session of 1933,

as amended by Chapter 48 of the Acts of the Second Extraordinary Session of 1933. There is no express authority conferred upon the City of Bluefield, either by its charter or by general law to separately incorporate in any manner any of its boards or other departments. Unless, therefore, this power can be justified on the basis of being incidentally indispensable to the exercise of the function of the City of Bluefield, West Virginia, involved here, it must fail. It therefore follows that the decision of this question must rest entirely upon the exigencies of carrying into effect the purpose of the legislature as it is expressed, or necessarily implied, in Chapter 25 of the Acts of the First Extraordinary Session of 1933, as amended by Chapter 48 of the Acts of the Second Extraordinary Session of 1933, and that its decision has no general application. As we have already pointed out, we regard it as inevitable to conclude that the legislature intended to confer extra territorial powers, in so far as it could, upon the border towns and cities of the state to establish sewage lines and sewage disposal plants outside of the State of West Virginia within ten miles of their boundaries. How, in this instance, may that be done? It is pointed out in the briefs that when incorporated, the sanitary board of the City of Bluefield, West Virginia, can be domesticated in the State of Virginia as a sewage purification company, under the Virginia law. There is no other way pointed out in the briefs, nor known to us, by which the City of Bluefield or the sanitary board created by its governing body could, under the laws of the State of Virginia, acquire property in that state and carry out the plan contemplated. It would seem, therefore, that since the incorporation of its sanitary board is the only plan by which the power intended to be granted by the legislature to that city to construct a sewage disposal plant outside the State of West Virginia, can be legally effectuated, the power to so incorporate its sanitary board is a necessary and incidental right to the main power granted. As we have stated, we do not lay down the general prin-

ciple that municipalities may incorporate their various boards and commissions. We restrict the ruling rigidly to the facts and circumstances developed in this case demonstrating the necessity of incorporating the sanitary board of the City of Bluefield, West Virginia, in order to carry into effect the powers conferred upon that city by the act of the legislature in question. On this basis, we find that the power exists and approve its exercise.

For the reasons stated, the granting of the injunction, as prayed for in the plaintiff's bill, is refused.

*Injunction refused.*