GRINNELL COMPANY, INC. *v.* THE CITY OF
CRISFIELD ET AL.

[No. 227, September Term, 1971.]

*Decided February 17, 1972.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Frank H. Weller, Jr.*, with whom were *Jerald J. Oppel, Ober, Grimes & Shriver* and *Lionel E. Bennett* on the brief, for appellant.

*Thomas S. Simpkins*, with whom was *Wade D. Ward* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

The facts leading to this appeal are undisputed. The City of Crisfield, Maryland (City), one of the appellees, being desirous of promoting industrial and employment prospects in its area, entered into an arrangement with one of its local business enterprises, the Rubberset Company (Rubberset), the other appellee, whereby it agreed to finance the construction of a warehouse and lacquer dip addition to the Rubberset plant.[1] The agreement en-

---

1. On September 1, 1971, the Rubberset Company was dissolved and wholly merged into the Sherwin-Williams Company, and on September 3, 1971, by order of the Circuit Court for Somerset County the name Rubberset Company was changed in this cause to Sherwin-Williams. The plant manufactures paint brushes, rollers and similar equipment.

tered into between the City and Rubberset is normally referred to as the sale-leaseback method of financing, and as the name implies, it provided that Rubberset would sell to the City certain real property upon which the City would construct the plant addition, and in turn the City would lease back the property to Rubberset. On February 1, 1967, Rubberset executed a deed passing title to the property which was located outside of the City Limits, to the City, and on February 3, 1967, the parties executed a lease agreement which stipulated that the City would complete the acquisition of land upon which the plant addition was to be constructed and erect the improvements called for, and that Rubberset would lease the premises from the City at a specified rental for a term of 20 years, at the end of which term Rubberset would be allowed to repurchase the property. The City raised the money for the acquisition and construction from the sale of industrial revenue bonds under the authority of Maryland Code (1971 Repl. Vol.) Art. 41, §§ 266A-266I.

Also on February 3, 1967, the City entered into a contract with Weidemuller Construction Company (Weidemuller) whereby Weidemuller agreed to build the plant addition at a cost of $390,950.00, and Weidemuller executed labor and material payment and performance bonds pursuant to Code (1969 Repl. Vol.) Art. 90, § 11, naming itself as principal, Fidelity and Deposit Company of Maryland as surety, and the City and Rubberset as obligees. On February 13, 1967, Weidemuller contracted with the appellant, the Grinnell Company, Inc. (Grinnell) whereby the latter was to provide the materials, equipment and labor for the installation of a fire protection system for the plant addition. As a result of not having been paid for the performance of its contract, Grinnell on August 26, 1968, notified Fidelity and Deposit Company of Maryland and the appellees of its intention to place a mechanics' lien on the property. On January 13, 1969, it filed a claim for a mechanics' lien in the amount of $38,022.38 in the Circuit Court for Somerset County and on January 12, 1971, filed a bill

of complaint to enforce the mechanics' lien in which it pleaded, in the alternative, for monetary damages.

The appellees filed demurrers to the bill of complaint which, after a hearing in the Circuit Court for Somerset County (Duer, J.) were sustained without leave to amend. The lower court held that "Article 90, sec. 11 of the Code is controlling" and on the basis of this Court's decision in *Hamilton v. Board of Education*, 233 Md. 196, 195 A. 2d 710 (1963) determined that "[T]he sub-contractor has no recourse against the City by way of mechanics' lien." The court, further commenting as to why it sustained Rubberset's demurrers, stated:

> "Title to the premises is vested in the City and Rubberset's legal interest is by way of lease only. Rubberset was not a party to the construction contract, and no allegation is made that it ever promised or agreed to assume any responsibility for liability incurred in construction nor has any privity between Rubberset and the lienor been shown. In any case since it is here decided that the interest of the City is not subject to a mechanics' lien, it follows that the interest of Rubberset being subordinate thereto likewise is not subject to mechanics' lien."

Grinnell appealed the decision of the lower court.

In challenging the sustaining of the City's demurrer, Grinnell contends that Code (1969 Repl. Vol.) Art. 90, § 11, is not applicable because the City was not involved in a public construction contract.[2] It concedes that *Hamil-*

---

2. Article 90, § 11, in part provides that:
"* * * Before any contract exceeding five thousand dollars ($5,000) in amount, for the construction, alteration, or repair *of any public building or public work or improvement* of the State of Maryland, or of any county, city, municipal corporation * * *, is awarded to any person, he shall furnish to the State of Maryland, or to such county, city, municipal corporation * * *, the following bonds which shall become binding upon the award of the contract to such person * * *:
(1) A performance bond executed by a surety company * * * for the protection of the public body.
(2) A payment bond executed by a surety company * * *

*ton v. Board of Education, supra,* is dispositive of the issue of whether or not a subcontractor has a remedy by way of a mechanics' lien in a claim arising out of a public construction contract. There, Judge Hammond (now Chief Judge) writing for the Court stated:

> "The statutory direction that each public construction contract include the furnishing of a payment bond for the protection of materialmen and subcontractors refutes the claim that the contract between the Board and the prime contractor intended to make suppliers or subcontractors beneficiaries 'in fact though not in form,' entitled to demand payment direct from the Board. From the requirement of a payment bond there may be inferred a legislative intent, written into each public construction contract, that the State or other public body is not to have a duty to pay or to see to the payment of materialmen or subcontractors beyond the furnishing of the payment bond." 233 Md. at 200.

See also *Williams Construction Company, Inc. v. Construction Equipment Company, Inc.,* 253 Md. 60, 67, 251 A. 2d 864 (1969) ; *Rubberoid v. Glassman,* 248 Md. 97, 106, 234 A. 2d 875 (1967) ; and *Montgomery County Board of Education v. Glassman Construction Company,* 245 Md. 192, 201, 225 A. 2d 488 (1967). Grinnell points out, however, that the City's action in the instant case, where it contracted for the construction of a plant addition to a private, profit-making company, did not constitute involvement in a "public construction" project. Therefore, it contends that *Hamilton,* wherein the Montgomery County Board of Education was sued by a sup-

---

for the protection of all persons supplying labor and materials * * * to the contractor or his subcontractor in the prosecution of the work provided for in the contract for the use of each such person. The bond shall be in the amount not less than fifty per centum (50%) of the total amount payable by the terms of the contract." (Emphasis supplied.)

plier of labor and materials in its effort to obtain a mechanics' lien is, on its facts, distinguishable from the case at bar. We do not agree with this deduction for the reason that once the City's involvement in the construction of Rubberset's plant addition is placed in its proper perspective, it becomes apparent that its action was motivated by a public purpose.

To obtain this perspective we must look to Code (1971 Repl. Vol.) Art. 41, § 266B, the provision which authorized the City to issue revenue bonds in order to finance the construction of the plant addition. Article 41, § 266B states:

> "In order to *relieve conditions of unemployment or to encourage the increase of industry* in this State, any municipality or county may borrow money by issuing negotiable bonds for the purpose of defraying the cost of acquiring any industrial building or buildings * * *, either by purchase or construction, but only after an ordinance or resolution has been adopted by the legislative body of the municipality or county specifying * * * that the industrial building * * * is *to be acquired for a bona fide tenant or tenants* * * *. Nothing herein shall be construed to authorize any municipality or county to acquire any industrial building or buildings * * * by eminent domain. * * *" (Emphasis supplied.)

Grinnell makes no allegation that the City entered into the agreement with Rubberset for reasons other than to "relieve conditions of unemployment" and "encourage the increase of industry," and, indeed the lease executed by the City and Rubberset specifically states this to be the purpose for the agreement.

The Court in *City of Frostburg v. Jenkins*, 215 Md. 9, 136 A. 2d 852 (1957) was confronted with a similar question. In that case, a taxpayer had sought and obtained

from the Circuit Court for Allegany County an order restraining the City of Frostburg from holding a special election for the purpose of gaining authority to issue municipal bonds to finance the acquisition of land and the construction of a building for a private, profit-making manufacturing company. The taxpayer contended that the Constitutional prohibition against municipalities using public funds for private use prevented the City of Frostburg from exercising the powers granted to it under Chapter 662, § 103 of the Laws of 1953 to "purchase property and to construct or reconstruct buildings or other structures to be used by manufacturing companies agreeing to locate in Frostburg." This Court, in reversing the circuit court, stated:

> "The only declaration of public policy in the enabling act before us [Chapter 662, § 103 of the Laws of 1953] is the statement that the power is granted 'in order to encourage industrial development'. * * * [A]nd we might, indeed, take judicial notice of the fact that the location of new industry in a municipality furnishes employment and measurably increases the resources of the community and its financial well-being."
>
> * * *
>
> "So long as the legislation has a *substantial relation to the public welfare and can fairly be said to serve a public purpose,* it is not the court's function to strike it down, * * *. We think the legislation in the instant case is not beyond the bounds of legislative power." (Emphasis supplied.) 215 Md. at 16 and 19.

See also, *Maryland Industrial Development Financing Authority v. Helfrich,* 250 Md. 602, 607, 243 A. 2d 869 (1968) ; *Town of Williamsport v. Washington County Sanitary District,* 247 Md. 326, 331, 231 A. 2d 40 (1967) ; *County Commissioners of Queen Anne's County v. Miles,* 246 Md. 355, 372, 228 A. 2d 450 (1967) ; and *Lerch v.*

*Maryland Port Authority,* 240 Md. 438, 446, 214 A. 2d 761 (1965).

In short, we think that the action of the City of Crisfield in financing the acquisition of land and the construction of a plant addition for the Rubberset Company under the authority of Article 41, § 266B served a valid purpose, and consequently is a "public work or improvement," as those words are intended in Article 90, § 11. Having determined that the plant addition falls within the ambit of Article 90, § 11, it follows from *Hamilton, supra,* and the other cases we have cited that a mechanics' lien was an unavailable remedy for the appellant to pursue against the City of Crisfield.

Grinnell has made the additional contention that since the Rubberset plant was located outside of the City limits of Crisfield, the City may not claim that the plant addition served a public purpose for that City. We think, however, that it has placed too strict a construction on what may be a valid public purpose for a city under the Act. The applicable provisions of Article 41, § 266 contain no such geographic limitation on the location of a project and we feel that to judicially draft one would be contrary to the intent of the legislature, since the stated purpose of the statute is not only to encourage the increase of industry, but also to relieve conditions of unemployment. It is, we believe, entirely likely that persons residing within the City limits of Crisfield will seek employment outside of those limits, within the immediate vicinity of the community and probably at the Rubberset plant.

With respect to the demurrer of Rubberset, Grinnell maintains that Rubberset's interest, both beneficial and legal, in the premises, and its control over the premises vests it with a sufficient interest in the property as to render that interest subject to a mechanics' lien. Among the evidence of Rubberset's interest in the property, Grinnell cites the facts that Rubberset was to receive benefits from the construction contract executed by the City and Weidemuller, that Rubberset held some power,

concurrent with that of the City, to approve the construction contract, that it had an option to purchase the property after the expiration of the lease term, that it is named as an obligee on the performance bond executed by Weidemuller and that it is the party presently holding the money allegedly due Grinnell. While it may be true that Rubberset possesses an interest in the property and a control over it, which is superior to that of an ordinary lessee, it is still a lessee and we think it significant that Rubberset was not a signatory to the construction contract. In *U. S. Title & Marble v. B. & M. Welding*, 254 Md. 81, 253 A. 2d 838 (1969), Judge Singley, speaking for the Court, remarked:

> "* * * [A] mechanics' lien ordinarily attaches to whatever interest the person responsible for the improvements has in the property. *Beehler v. Ijams*, 72 Md. 193, 19 A. 646 (1890)." 254 Md. at 87.

Grinnell attempts to mitigate the importance of the fact that Rubberset did not sign the construction contract by quoting the portion of the contract which stipulates that any change, alteration or addition to the building's plans and specifications must be approved in writing by both the City and Rubberset. It would appear, however, that such an inclusion in a construction contract would be a prudent safeguard and not an unusual privilege for any tenant who has signed a 20 year lease for a building yet to be constructed.

Grinnell also points out that in the event that the construction fund, resulting from the sale of the bonds, should be insufficient to pay the construction costs, then Weidemuller was to seek payment solely from Rubberset. It is clear, however, that this provision was inserted in the construction contract solely to assure that the City would not be obligated to contribute any monies to this project other than that accumulated through the sale of the bonds, and we fail to see how this can be interpreted as an indication that Rubberset is the "person responsible

for the improvements" or that this makes it the *employer* of Weidemuller. We might add that the contract price agreed to between the City and Weidemuller was $390,-950.00, and the City was authorized to issue bonds up to the amount of $1,250,000.00, a sum which the parties certainly deemed sufficient to meet the construction costs.

Finally, the appellant disputes the lower court's refusal to award it the monetary damages which were prayed for in the alternative. The lower court found, and we agree, that the request for monetary damages in a cause to enforce a mechanics' lien is inappropriate, as the enforcement of a mechanics' lien is an action exclusively *in rem*. See *Gaybis v. Palm*, 201 Md. 78, 83, 93 A. 2d 269 (1952). We would also note that what has been stated in this opinion is not intended to prejudice whatever rights the appellant may have to recover against the proper party under the payment bond, and that Article 63, § 33 states:

> "Nothing contained in this article [Mechanics' Lien Law] shall be construed to affect the right of any person to whom any debt may be due for work done or materials furnished to maintain any personal action against the owner of the building or any other person liable therefor."

See *Brunecz v. DiLeo*, 263 Md. 481, 484, 283 A. 2d 606 (1971) ; *Port City Construction Company v. Adams & Douglas,* 260 Md. 585, 593, 273 A. 2d 121 (1971).

> *Order sustaining demurrers affirmed; appellant to pay costs.*