TERRELL, Chief Justice.
Chapter 13963, Acts of 1929, as amended, is the City Charter of the City of Cocoa. It will hereinafter be referred to as the City. November 13, 1956, pursuant to its Charter, the City adopted a resolution authorizing' the issuance of $3,800,000 Water Revenue Bonds for the purpose of refunding outstanding obligations of the City consisting of $108,000 Water Revenue Bonds dated May 1, 1948, and $56,000 Utilities Revenue Bonds dated February 1, 1954,' and to provide funds for a portion of the cost of constructing additions, extensions and improvements to the water system of the City, the remaining portion of the costs of constructing extensions and improvements to the City’s water system to be provided by an advance connection charge in the approximate amount of $4,000,000 to be paid the City by the Department of the Air Force of United States of America pursuant to a water service contract entered into between the City and the United States, by and through the Department of the Air Force under date of April 2, 1956, a copy of said contract being appended to the record herein.
The proposed bonds, together with the interest coupons attached, are payable solely from and secured by a pledge of the net revenues derived from the operation of the water system of the City and the credits to be provided to the Department of the Air Force in liquidation of the advance connection charge are to be provided by means of credits against future water service billings to the Department of the Air Force in connection with installations serviced by the City as provided in the water service contract. Pursuant to Chapter 75, Florida Statutes, F.S.A., the City precipitated this suit to validate said $3,800,000 Water Revenue Bonds, testimony was taken and at final hearing the chancellor validated said bonds and all proceedings taken in connection with their authorization. This appeal is from the decree of validation.
The first question presented is whether or not the Water Revenue Bonds in question constitute “bonds” of the City as contemplated by Section 6, Article IX of the Constitution of Florida, F.S.A.
The chancellor answered this question in the negative. Appellant admits that municipal obligations payable solely from revenues of the project created and in no way supported by ad valorem taxes of the City are not bonds requiring an approving vote of the freeholders under Section 6, Article IX of the Constitution, but it contends that under the proposed plan of financing the City intends to incur not only the indebtedness represented by the $3,-800,000 Water Revenue Bonds, but in addition thereto, it is under contract to repay the United States or the Department of the Air Force approximately $4,000,000 for connection charge pursuant to Water Service contract dated April 2, 1956. Appellant raises no objection to that part of the validating decree in so far as it affects the $3,800,000 Water Revenue Bonds but it says the issuance of the Water Revenue Bonds is so integrated with the obligation of the City under the water service contract that the two obligations must be considered together and when so considered the revenue sources for paying principal and interest on the Water Revenue Bonds would be so depleted that the fiscal plan of the City may result in a general debt clearly within the inhibition of Section 6, Article IX of the Constitution.
We have examined that part of the contract relating to payment of water connection charges, paragraph 17(c)(2) and (f) and find no theory under which the water system may be operated out of the general funds. The military program for army installations, the Canaveral Air Force Base, the Patrick Air Force Base and the Permanent Crash Boat Station all show permanency and the testimony shows substantial increase in population, installation of homes and other conveniences that go *539 with increased population. These assets and others shown rebut any suggestion of financial inability to meet the obligation of the City imposed by the bonds. The evidence of the financial consultant for the City dispels any suggestion of economic fault in the water service contract.
The second question challenges the authority of the City to enter into the water service contract with the United States or the Department of the Air Force and accept from it the advance connection charge of approximately $4,000,000 to finance costs of construction or acquisition of additions, extensions and improvements to the City’s water system.
As to power of the City to make the contract in question, Paragraph 7 of Section 1, Article II, Chapter 13963, Acts of 1929, City Charter, is a complete answer to this question and is as follows:
“To provide the City with a supply of water for public purposes, and to sell the same to private individuals and other users, for profit by waterworks to be within or beyond the boundaries of the City, and for that purpose to acquire, build, construct, or lease, or permit others to acquire, build, construct or lease waterworks and a water system, and for that purpose to acquire property, lakes, wells, to dig artesian wells and other wells, and to connect the same with the City by mains or otherwise, and to do all and whatever may be necessary, either within or without the City of Cocoa, to provide the waterworks and a water system complete for said city; * *
Said provision of the City Charter is fortified by State v. Florida Keys Aqueduct Commission, 148 Fla. 485, 4 So.2d 662. The evidence of the city manager, engineers and others competent to testify as to water conditions and needs in the vicinity of the city amply support the decree of the chancellor. See also State v. City of Miami, Fla., 76 So.2d 294; State v. Inter-American Center Authority, Fla., 84 So.2d 9; State v. Town of North Miami, Fla., 59 So.2d 779, and others.
The third question challenges the authority of the City to construct the additions, extensions and improvements to its water system extending approximately twenty miles beyond the city limits for the purpose of providing water to the Department of the Air Force as indicated in the proceedings for issuance of the bonds sought to be validated.
The answer to this question is found in Section 1, Article III, Chapter 18456, Acts of 1937, City Charter, granting authority to the City to extend its water system beyond the city limits. Appellant admits the authority but contends that the City abused its authority when it extended its water mains twenty miles. We think there is no merit to this contention. The evidence shows the urgent need for water and to supply the people of the City and to comply with its contract to furnish water to the Air Force installations with which it had a contract to do. The feasibility of the proposed water supply and distribution system, as well as the method of financing, are amply shown. When the need for a copious water supply is shown as it is here and other sources are not adequate or satisfactory, we would not say that the City abused its discretion in extending its water system twenty miles beyond the city limits to supply the City and its customers.
The decree validating the Water Revenue Bonds should be, and is hereby, affirmed.
Affirmed.
HOBSON, ROBERTS and THORNAL, JJ., concur.