397 So.2d 685 (1981)
STATE of Florida et al., Appellant,
v.
CITY OF RIVIERA BEACH, a Municipal Corporation of the State of Florida, Appellee.
No. 59348.
Supreme Court of Florida.
April 16, 1981.
*686 David H. Bludworth, State Atty., and Oliver H. Harris, Asst. State Atty., West Palm Beach, for appellant.
Allan V. Everard, City Atty., Riviera Beach, and Henry E. Williams, Jr. of Brown, Wood, Ivey, Mitchell & Petty, Tampa, for appellee.
ADKINS, Justice.
This is an appeal from a judgment of the circuit court, Palm Beach County, entered in proceedings for the validation of bonds. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. (1980), and § 75.08, Fla. Stat. (1979).
The city of Riviera Beach brought an action to validate three million dollars in revenue bonds designated "industrial development revenue bonds (Standex International Corporation project) series 1980." The state attorney for the Fifteenth Judicial Circuit on behalf of the state of Florida filed an answer and objected to the issue of the bonds on grounds, inter alia, that the city had no authority under chapter 159, Florida Statutes, to sponsor a revenue bond project outside the municipal boundaries and further, that the city had no authority to sponsor an industrial project in an adjoining unincorporated area of the county without findings by, or the consent of, Palm Beach County. The bond issue was approved by final judgment of the circuit court and the state entered this appeal.
From the record it appears that the city, in connection with its industrial development program, was approached by representatives of Standex International Corporation, a Delaware corporation authorized to do business in Florida with principal offices in Salem, New Hampshire. Standex was considering the location of a plant in the industrial area or park in the city. After discussions and negotiations the city and Standex entered into a memorandum agreement covering the proposed issuance of the bonds and related matters.
The bonds are to be issued for financing part of the cost of a capital project, a manufacturing plant, to be sold to Standex pursuant to an installment purchase contract. The project consists of a 3.6 acre site located approximately a quarter of a mile or less from the current boundaries of the city in Palm Beach County, an industrial building of approximately 30,000 square feet, and machinery and equipment. The plant will manufacture electronic parts and components for automotive cruise control systems, for heart pacemakers, for guidance control systems used in remote control unit relay stations, and for U.S. radar components, and radar satellites for the military.
The company will employ 150 employees in the first year and, depending upon production *687 of another line of components, 300 employees within two years, working on a shift or shift-and-a-half basis. The bulk of these employees will be drawn from the city of Riviera Beach and Palm Beach County and surrounding areas.
The area on which the site is to be located was de-annexed from the city, but the city and the company desire that the project site be reannexed to the city. The first issue is whether the bonds could be validated for an industrial revenue project on property that is outside the city limits.
Article VII, section 10, Florida Constitution, provides that neither the state nor any other governmental unit shall "give, lend, or use its taxing power or credit to aid any corporation, association, partnership, or person." It further provides that this restriction shall not prohibit laws authorizing the "issuance and sale by any county, municipality, special district or other local governmental body of ... revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants... ." This constitutional provision authorizing the municipality to issue revenue bonds to finance the cost of a capital project for a manufacturing plant contains no geographic or territorial limitations.
Article VIII, section 2(c), Florida Constitution, provides that the municipal exercise "of extra-territorial powers by municipalities shall be as provided by general or special law."
These constitutional provisions do not prohibit the legislature from enacting a law authorizing any municipality to issue revenue bonds to finance a manufacturing plant located within or without the municipal limits or without regard to municipal boundaries.
The legislature implemented article VII, section 10(c), Florida Constitution, by the enactment of the Florida Industrial Development Financing Act, as amended, being sections 159.25-159.43, part II, chapter 159, Florida Statutes (1979). These are referred to as "the Act." Section 159.26 of the Act reads, in part, as follows:
The Legislature finds and declares that, in order to improve the prosperity and welfare of the state and its inhabitants, to improve living conditions, ... the economic development of the state, and to increase purchasing power and opportunities for gainful employment, it is necessary and in the public interest to facilitate the financing of capital projects for industrial or manufacturing plants, . .. within the state; to facilitate and encourage the planning and development of these capital projects without regard to the boundaries between counties, municipalities, special districts, and other local governmental bodies or agencies in order to more effectively and efficiently serve the interests of the greatest number of people in the widest area practicable; ...
(emphasis added).
The legislature, in other words, has found that the undertaking of industrial development projects by local government is a matter of state interest and that the issuance of bonds in support of these projects by local governments without regard to the boundaries between them better serves the state interest or purpose by more effectively and efficiently serving the interest of the greatest number of people in the widest area practicable. The Act, construed as a whole, clearly provides for the undertaking by a municipality of an industrial development project located outside of its boundaries.
The undertaking by a municipality of an industrial development project is the exercise of a proprietary power rather than a sovereign power. We clearly defined a proprietary function or power in Daly v. Stokell, 63 So.2d 644, 645 (Fla. 1953), when we said:
We understand the test of a proprietory power to be determined by whether or not the agents of the city act and contract for the benefit and welfare of its people; any contract, in other words, that redounds to the public or individual advantage and welfare of the city or its people is proprietory, while a governmental function, as the term implies, has to *688 do with the administration of some phase of government, that is to say, dispensing or exercising some element of sovereignty.
This Court has repeatedly upheld the exercise of extraterritorial powers, particularly with respect to proprietary projects, by the municipalities where such powers are supported by or derived from legislative grant. Town of Riviera Beach v. State, 53 So.2d 828 (Fla. 1951), reversing the lower court and validating revenue bonds of the town, now the city of Riviera Beach, for the purchase of a water system located in another municipality; State v. City of Pensacola, 143 Fla. 823, 197 So. 520 (1940), validating revenue bonds to extend city's water system into unincorporated areas adjacent to the city; State v. City of Tampa, 137 Fla. 29, 187 So. 604 (1939), validating sewer revenue bonds to extend city's sewer system into unincorporated areas adjacent to the city; State v. City of Cocoa, 92 So.2d 537 (Fla. 1957), validating bonds to extend a city water system twenty miles beyond city limits; State v. City of Melbourne, 93 So.2d 371 (Fla. 1957), validating bonds to extend a city water system into two other municipalities; Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924 (1942), upholding the power of a city to operate a bathing beach in a park outside the city; and Hope v. City of Gainesville, 195 So.2d 849 (Fla. 1967), validating bonds to extend city water, sewer, and electric system outside the city boundaries. See also Town of Palm Beach v. City of West Palm Beach, 239 So.2d 835 (Fla. 4th DCA 1970), upholding the right of a city to construct an ocean sewer outfall and appurtenances through another town; and City of North Miami v. Town of Bay Harbor Islands, 296 So.2d 513 (Fla.3d DCA), cert. denied, 305 So.2d 200 (Fla. 1974), upholding the operation and control by a town of a causeway extending into another city.
The power of a municipality to undertake an industrial development project located outside its boundaries has not heretofore been ruled upon in this state. There are, however, a number of decisions from other jurisdictions upholding the right of a municipality to finance an industrial project located outside the city limits. Norvell v. City of Danville, 355 S.W.2d 689 (Ky. 1962); Grinnell Co., Inc. v. City of Crisfield, 264 Md. 552, 287 A.2d 486 (1972); Birge v. Town of Easton, 274 Md. 635, 337 A.2d 435 (1975); Bennett v. City of Mayfield, 323 S.W.2d 573 (Ky. 1959).
In the case sub judice there is clearly present the requisite public purpose by reason of the existence of a benefit nexus between the proposed project and the city and its inhabitants. Benefits are abundantly clear from evidence which shows the proximity of the project to the city, the job opportunities, the equal opportunity employment, the wage scales, the employee training programs, stimuli to the local economy, and the mutual desire of the company and the city that the project site become a part of the city. Requisite public purpose is clearly present. The city is authorized and empowered by the Act to undertake this particular industrial development project located outside but within a quarter of a mile of its current boundaries.
The next issue to be determined is whether a municipality may undertake an industrial development project located outside of its boundaries without the consent of, or consultation with, the governmental unit in which the project is located.
The Revenue Bond Act of 1953, part I, chapter 159, Florida Statutes (1979), by section 159.03(1) thereof provides that if a public improvement project is outside the corporate limits of the issuer, the consent of the adjoining governmental authority must first be obtained. The Industrial Development Financing Act, enacted in 1969, part II of chapter 159, sections 159.25-159.43, Florida Statutes (1969), omitted any requirement or reference to consent or consultation with the adjoining governmental authority.
Part I of chapter 159, the Revenue Bond Act of 1953, relates to the financing of certain named classes of ordinary public improvements to be held and used by counties or municipalities. Part II of chapter 159, The Florida Industrial Development Financing *689 Act, relates to the financing of industrial development projects to be leased or sold to and used and operated by private interests. There are no cross references between part I and part II of chapter 159. Section 159.27, Florida Statutes, the definitional section in the Florida Industrial Development Financing Act, defines "bonds" as meaning bonds authorized "to be issued by any local agency under this part ..." Statutes which have no common aim or purpose and scope and which do not relate to the same subject, object, thing or person are not in pari materia. Singleton v. Larson, 46 So.2d 186 (Fla. 1950).
In the case sub judice the city is not seeking to exercise its rights of sovereignty over property outside its boundaries; it is merely, in the exercise of a strictly proprietary power, seeking to undertake an industrial development project outside of its boundaries. Although the Act does not require the consent of or consultation with the governmental unit in which the project is to be located, Palm Beach County, to the extent of its applicable regulatory ordinances, rules and regulations, will not be without a voice in the construction and operation of the project. The governmental unit is bound by the zoning regulations of another governmental unit, where one governmental unit seeks to utilize property within the geographical limits of a different governmental unit without regard to the so-called governmental-proprietary distinction. Palm Beach County v. Town of Palm Beach, 310 So.2d 384 (Fla. 4th DCA 1975).
Section 159.29 of the Acts says that in undertaking a project the local agency shall be guided by and shall observe the four criteria and requirements set forth in the section. It provides that the determination of compliance therewith by the local agency shall be final and conclusive. Since it is the local agency undertaking the project that must comply with the four criteria and requirements, it does not make sense that some other agency or agencies should also make the determination of compliance, and then that the determination of such other agency or agencies, should affect the final or conclusive determination by the local agency in charge of the project.
In State v. Jacksonville Port Authority, 266 So.2d 1 (Fla. 1972), the Jacksonville Port Authority, as the local agency undertaking an industrial development project, determined that another local governmental unit, the consolidated city of Jacksonville, would be able to cope satisfactorily with the impact of the project. In the opinion validating the bonds, we said:
Fla. Stat. § 159.29, F.S.A. provides that the determination of the local agency as to compliance with the criteria of that section shall be final and conclusive. Accordingly, we deem the requirements of Fla. Stat. § 159.29, F.S.A. to have been satisfied by the Port Authority without the need for discussion.
266 So.2d at 3.
The determination of the undertaking local agency, city of Riviera Beach, is final and conclusive. Neither the consent of nor consultation with other governmental units, within whose territorial limits the project is situate, is required for the undertaking of an industrial development project under the Act. Of course, the regulatory ordinances and rules and regulations of the county of Palm Beach would be applicable to the project.
The judgment of the circuit court is affirmed.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.