Mr. Samuel S. Goren City Attorney City of North Lauderdale 701 S.W. 71st Avenue North Lauderdale, Florida 33068
Dear Mr. Goren:
This is in response to your request for an opinion on substantially the following question:
 MAY THE CITY OF NORTH LAUDERDALE, FLORIDA, ENTER INTO AN OPERATIONS AND MAINTENANCE AGREEMENT WITH THE NORTH LAUDERDALE UTILITY AUTHORITY, INC., A FLORIDA NONPROFIT CORPORATION, WHICH WOULD ALLOW MUNICIPAL EMPLOYEES TO ASSIST IN THE OPERATIONS AND MAINTENANCE OF THE BROADVIEW UTILITIES CORPORATION PLANT, WHICH EXISTS AS A WATER UTILITY SYSTEM NOT WITHIN THE MUNICIPAL BOUNDARIES OF THE CITY OF NORTH LAUDERDALE BUT IN THE UNINCORPORATED AREA OF BROWARD COUNTY, FLORIDA?
You state in your letter that the North Lauderdale Utility Authority, Inc., was formed for the purpose of acquiring a sewage treatment and utility system from Broadview Utilities Corporation to serve a portion of the unincorporated area of Broward County contiguous to the City of North Lauderdale.
You also state that the North Lauderdale Utility Authority, Inc., proposes to purchase the utility system owned by Broadview Utilities Corporation by tax-free municipal bond financing and this proposed purchase is based upon a satisfactory operations and maintenance agreement with the City of North Lauderdale, whose employees possess the requisite skills and competency to operate and maintain such sewage treatment and utility system. The Broadview Utility Plant in question is not within the municipal boundaries of, and will not serve or specifically benefit, the City of North Lauderdale or its inhabitants.
Article VIII, s 2(c), State Constitution, provides that the `exercise of extra-territorial powers by municipalities shall be as provided by general or special law.' Compare s 166.021(3)(a), F.S., (which provides in part that the legislative body of each municipality may enact legislation concerning any subject matter upon which the Legislature may act, except the subject of the exercise of extra-territorial power, which requires a general or special law); Art. VIII, s (4), State Const. (by law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law).
In the instant case, the city is not seeking to exercise its rights of sovereignty over persons or property outside its boundaries, but it is proposed that the city contract with a private nonprofit corporation to operate and maintain a private utility system for such corporation and for the use and benefit of persons and properties located outside of the jurisdictional and territorial limits of the city. To my knowledge, the power of a municipality to undertake the operation and maintenance of such a private utility for the use and benefit of others has not heretofore been ruled on by the courts of this state. Cf. State v. City of Riviera Beach, 397 So.2d 685 (Fla. 1981), holding that the Florida Industrial Development Financing Act, as amended, Part II of Ch. 159, F.S., authorizes municipalities to finance manufacturing plants located outside their boundaries, and noting that the Supreme Court has repeatedly upheld the exercise of extraterritorial powers, particularly with respect to proprietary projects, by municipalities where such powers are supported by or derived from legislative grant.
While s 163.01, F.S., empowers the municipalities to exercise jointly with other public agencies (as defined by s 163.01(3)(b), F.S.) any power, privilege or authority which such agencies share in common and which each might exercise separately by or pursuant to a contract in the form of an interlocal agreement to provide services and facilities and perform service functions such as the utility functions and services here involved, that statute does not authorize such contracts between municipalities and nongovernmental or private entities. Compare, Ch. 180, F.S., authorizing municipalities to execute their corporate powers and to provide for water and sewage collection and disposal systems outside of their corporate limits and to contract for the construction or use of the same with private companies (as defined by s 180.05, F.S.); former Ch. 184, F.S., authorizing municipalities to construct, maintain and operate sewage disposal systems without their corporate limits; and AGO 080-87, concluding that a municipality was without the requisite statutory authority to levy special assessments on extra-municipal property to finance the costs of making improvements to that part of its waterworks system operated and maintained in the unincorporated area of the county.
I am unaware of any charter or statutory provision and none has been drawn to my attention, which authorizes the city to operate and maintain a private utility system for a private nonprofit corporation and for the use and benefit of persons and properties located outside of its corporate limits, and to utilize city employees to effect such extra-territorial operational and maintenance functions. The articles of incorporation and the by-laws of the nongovernmental corporation or the terms of any contract it may enter into with others, including the city, cannot serve to lawfully confer any authority on the city to operate and maintain the private utility system in question for the use and benefit of persons and properties located outside the corporate limits of the city. Absent statutory authority or any judicial precedent therefor and in view of the limitation on the exercise of extra-territorial powers prescribed by Art. VIII, s 2(c), State Constitution, I am constrained to conclude that the city possesses no such extra-territorial authority.
Therefore, until legislatively or judicially determined otherwise, I am of the opinion that the City of North Lauderdale is without the requisite extra-territorial power to operate and maintain or contract for the operation and maintenance of a private utility system owned by a private nonprofit corporation for the use and benefit of persons and properties located outside of its corporate limits and to utilize city personnel to carry out such operational functions and services.
Sincerely,
Jim Smith Attorney General
Prepared by: Bill Hall, Assistant Attorney General