579 So.2d 219 (1991)
CITY OF MOUNT DORA, Florida, Appellant,
v.
JJ's MOBILE HOMES, INC., Appellee.
No. 90-733.
District Court of Appeal of Florida, Fifth District.
April 25, 1991.
*221 Sherri K. Dewitt and Houston E. Short of Graham, Clark, Pohl & Jones, Winter Park, for appellant.
Mary M. McDaniel of Minkoff & McDaniel, P.A., Tavares and Robert Q. Williams of Williams, Smith & Summers, P.A., Tavares, for appellee.
COWART, Judge.
This case involves a territorial dispute between a private utility company with certificates from the Florida Public Service Commission (PSC) authorizing it to provide utilities in a certain geographical territory and a municipality which, subsequent to the acquisition by the private company of its utility franchise, annexed a portion of the private utility company's service area and claims the right to provide similar utility services in the annexed portion of the private utility company's service territory.
In 1981, a private utility company, JJ's Mobile Homes, Inc. (appellee herein, plaintiff below) obtained from the Florida PSC certificates of necessity granting the private utility company the right (franchise) to operate a water and sewer utilities system within a specified geographical territory near, but outside of, the city limits of a municipality (the City of Mount Dora, appellant herein, defendant below). In 1988, the municipality voluntarily annexed into its city limits a tract of land most of which is within the private utility company's certified service territory and by ordinance approved a land developer's proposal that the municipality serve the developer by extending the municipality's water and sewer utilities into a portion of the newly annexed area of the private utility company's certified service territory.
The private utility company, as plaintiff, filed this action against the municipality, as defendant, for a judicial determination that the private utility company had the legal right to provide water and sewer service within all the territory specified in its certificates from the Florida PSC and that the municipality did not have the legal right to provide the same utility service within the territory. The trial court granted summary judgment in favor of the private utility company and the municipality appeals.
We adopt the trial court's finding of uncontroverted facts, conclusions of law and results. The trial court found the following facts to be uncontroverted:
1. The Plaintiff (private company) owns and holds Florida Public Service Commission Certificates Number 298-W and 248-S granting the Plaintiff the right to operate a water and sewer utility system within a specified territory.
2. On March 5, 1981, the Florida Public Service Commission entered an order approving the issuance of the foregoing water and sewer certificates to the Plaintiffs and in said order, found that notice as required by law had been given and that the issuance of the certificates to the plaintiff was "in the public interest."
3. Pursuant to that authority, the Plaintiff owns, operates and maintains an approved water and sewer utility system within the certified territory, which utilities have been in operation since the mid-1970's.
4. The Plaintiff's certificated territory encompasses Dora Pines mobile home subdivision, together with a large parcel of currently undeveloped property. The Plaintiff's utilities currently serve the Dora Pines mobile homes subdivision, which consists of approximately one hundred *222 thirty-eight (138) water and sewer customers.
5. At the time the Plaintiff's water and sewer systems were constructed, they were designed and built for the purpose of providing water and sewer utility service to the entire certificated territory. The Plaintiff's utilities have the present ability to provide water and sewer service to the certificated territory.
6. The Plaintiff's water and sewer utilities have current operating permits from the Department of Environmental Regulation, which permits are valid through October 15, 1994. The sewer plant is currently permitted for ninety-five thousand (95,000) gallons per day, and current flows going into the plant are only about seventeen thousand (17,000) gallons per day. The plant is designed so as to be expandable up to two hundred ninety-five thousand (295,000) gallons per day.
7. Sometime in 1987, the Plaintiff learned that the Defendant was considering the voluntary annexation of a large tract of property, a significant portion of which was within the Plaintiff's certificated territory. The Plaintiff objected at that time to the City's proposed extension of its municipal utilities into the Plaintiff's certificated territory.
8. In Ordinance 467 (adopted May 3, 1988) and Ordinances 488, 489 and 490 (adopted October 3, 1989), the City voluntarily annexed a tract of contiguous property, most of which lay within the Plaintiff's certificated territory. In Ordinance 529 (adopted October 3, 1989), the City authorized a planned unit development for the annexed property and as a part of that ordinance, adopted a developer's agreement calling for water and sewer utilities to be furnished by the City to the annexed property.
9. On March 31, 1989, the Plaintiff, through its attorney, formally notified the City of its claimed right to provide water and sewer service to its certificated territory.
10. The Plaintiff is currently actually operating its water and sewer utility within its certificated territory. The Plaintiff's existing water and sewer lines extend to a point that is immediately adjacent to the annexed property making them much closer to the annexed property than the Defendant's water and sewer line.
The trial court made the following conclusions of law:
1. The Public Service Commission water and sewer certificates issued to the Plaintiff grant the Plaintiff the exclusive right to provide water and sewer utilities service to the certificated territory. This right precludes any other entity from having the right to serve the certificated area with water and sewer utilities.
2. Although municipal utility systems are not subject to regulation by the Public Service Commission as a utility, neither are municipalities given dominion over decisions of the Public Service Commission.
3. The Plaintiff's actual operation of its water and sewer utility within its certificated territory is in territory which is immediately adjacent to the Defendant. Therefore, pursuant to Section 180.06, Florida Statutes (1989), the Defendant must obtain the Plaintiff's consent before construction of water and sewer utilities within the Plaintiff's certificated area. Without that consent, the Plaintiff has the exclusive right to provide service within its certificated territory.
The trial court declared and adjudicated:
... that the water and sewer certificates issued to the Plaintiff by the Florida Public Service Commission grant the Plaintiff the right to furnish water and sewer utility service to the certificated territory as described in the certificates to the exclusion of all other utilities, including those owned by the Defendant. Accordingly, the Defendant may not extend its water and sewer utility lines into any part of the Plaintiff's certificated territory.
Section 180.06, Florida Statutes, after enumerating activities authorized by municipalities and private companies, provides:

*223 However, a private company or municipality shall not construct any system, work, project or utility authorized to be constructed hereunder in the event that a system, work, project or utility of a similar character is being actually operated by a municipality or private company in the municipality or territory immediately adjacent thereto, unless such municipality or private company consents to such construction. [Emphasis added].
The city argues that section 180.06, Florida Statutes, does not apply because the private company does not actually provide services to the disputed area.
The restriction of the statute was designed to avoid the wastefulness of duplicate capital investments for competing utilities that could not likely be operated without financially jeopardizing each other's operating revenues if erected in the same consumer territory. State v. Plant City, 127 Fla. 495, 173 So. 363 (Fla. 1937) (construing Ch. 17119, § 1, Laws of Fla., predecessor statute to § 180.06, Fla. Stat.).
In regard to section 180.06, Florida Statutes, in Ortega Utility v. City of Jacksonville, 564 So.2d 1156 (Fla. 1st DCA 1990), the court held:
While the statute is not a monument to clarity and draftsmanship, ... we interpret it only to prohibit direct encroachment by one utility provider into an operating area already served by another. Any other interpretation would not seem to comport with logic or reason. Under our interpretation, there would be no duplicate capital investment within the same consumer territory.
In Ortega, the private company provided services within a specific (certified) area. The city planned to provide service to an area outside but located near the private company's certified area. In addition the private company had neither the capacity nor plans to serve the new area.
This case is distinguished from Ortega in that in Ortega the area sought to be served by the municipality was outside the private company's certified area and the private utility company did not have the capacity to serve the area the municipality sought to service, while in this case, the area the municipality proposes to serve is within the territory which the private company has the prior legal right to serve and the private company is ready, willing and able to serve the utility needs of its service area.[1]
The municipality argues that it is not subject to regulation by the PSC and interprets this statement to mean that it may serve with utilities an area within the city's boundary whether or not the PSC may have theretofore issued a certificate of necessity authorizing a private utility company to provide similar utility services in the same area.
Chapter 367, the "Water and Wastewater System Regulatory Law" provides the Florida Public Service Commission with exclusive jurisdiction over the authority, service and rates of utilities. Section 367.022(2) provides:
367.022 Exemptions  The following are not subject to regulation by the commission as a utility nor are they subject to the provisions of this chapter except as expressly provided:
* * * * * *
(2) Systems owned, or systems of which the rates and charges for utility service to the public are controlled, by governmental authorities.
The certificates issued to the private company by the PSC are a granting of a privilege generally referred to as a franchise. A franchise is defined as "a special privilege conferred by the government on individuals or corporations that does not belong to the citizens of a country generally by common right (citations omitted.)" 12 McQuillin, Municipal Corporations, § 34.03 (3d Ed.). When granted, a franchise *224 becomes a property right in the legal sense of the word. Leonard v. Baylen Street Wharf Co., 59 Fla. 547, 52 So. 718 (1910); West Coast Disposal Service, Inc. v. Smith, 143 So.2d 352 (Fla.2d DCA 1962), cert. denied, 148 So.2d 279 (Fla. 1962). But see, Alterman Transport Lines, Inc. v. State, 405 So.2d 456 (Fla. 1st DCA 1981) where the court rejected the argument of holders of certificates of public convenience that the deregulation of the trucking industry took away a valuable property right of the holders (the certificates) and impaired existing contracts.
In Pahokee Housing Authority v. South Florida Sanitation Co., 478 So.2d 1107 (Fla. 4th DCA 1985), rev. denied, 491 So.2d 280 (Fla. 1986), a dispute arose between a housing authority and the holder of an exclusive garbage franchise from the county over garbage collection in the area controlled by the authority. The authority decided to collect and dispose of its own garbage, claiming it was exempt from the exclusive franchise granted by the city. The trial court found that the authority's intrusion violated the private company's exclusive franchise. The district court affirmed but reversed the damages awarded to include the holder's costs of operation.
Southern Gulf Utilities, Inc. v. Mason, 166 So.2d 138 (Fla. 1964) is cited by the city for the broad proposition that the PSC has no authority whatsoever over utilities operated by governmental agencies. Mason must be read more narrowly. In Mason, a private company with an exclusive certificate issued by the PSC sought the PSC to issue a stop order for a municipal utility which invaded the private company's service area. The PSC dismissed the private company's complaint on the grounds that the PSC had no authority to restrain a governmental agency from invading the service area of the private company. The supreme court agreed but specifically noted it did not rule on the rights of the parties which rights were being litigated in an action for injunction in the circuit court which was not the subject of the appeal. This case presents no question as to the PSC's authority, as distinguished from the circuit court's subject matter jurisdiction, to restrain the city from invading the private company's area.
Although governmental utilities are exempt from the authority of the PSC this does not mean that the governmental unit has the authority to interfere with rights granted a private utility company by the PSC. The PSC certificates issued to the private company represent a valuable property right and the city is not authorized to interfere with those preexisting rights by the mere subsequent annexation of a portion of the private company's territory.
The municipality further argues that the trial court erred in finding as a matter of law that the certificates issued to the private utility company granted an exclusive right to provide utilities to the service territory because the certificates as issued do not use the word "exclusive."
In this case the PSC issued the private utility company certificates of necessity authorizing the private utility company to provide the public with water and sewer in the questioned territory before the municipality, which has the general legal authority to provide similar services within its municipal limits, annexed the area. The private utility company not only had the prior legal right but, more importantly, it also had the ability to meet its duty to provide such services. The statutory scheme of Chapter 367,[2] as well as the concept of a public utility, envisions that the right granted by the PSC to a private utility company is exclusive to the extent that such company has the ability to promptly provide service to the public within its franchised territory.
The essence of the concept of utilities serving the public is that it is in the best interests of the public that the entities, governmental or private, providing utility services not be permitted to compete *225 as to rates and service and that each entity be given an exclusive service area and monopolistic status. This unusual economic advantage is given a utility in our free market economy in exchange for the utility relinquishing its usual right to determine the level of service it provides and to set its own competitive rates and submitting those two matters to a governmental authority which regulates the quality of service to be provided and sets rates to provide the utility a reasonable return on its investment. The term public utility implies a public use with a duty on the public utility to service the public and treat all persons alike. See, 73 C.J.S., Public Utilities § 2 (1983) and 78 Am.Jur., Waterworks and Water Companies, § 2 (1975).
Territorial rights and duties relating to utility services as between prospective suppliers are more properly defined and delineated by administrative implementation of clear legislation than by judicial resolution of actual cases and controversies resulting from the lack of clear legislative direction. However, the problem is currently a controversial political matter in the State of Florida and in the absence of clear legislative intent, courts must resolve individual disputes by the application of principles which appear to best serve the public and to be fair and equitable to legitimate competing interests. Some such principles are:
(1) In Florida the basis for the right of both governmental and private entities to provide utility services to the public is statutory and the franchise right of each is equal and neither entity is, per se, superior or inferior to the other.
(2) A franchise granted to an entity, either governmental or private, authorized by law to provide utility service to the public, may be exclusive as to both type of service and territory. See, St. Joe Natural Co. v. City of Ward Ridge, 265 So.2d 714 (Fla. 1st DCA 1972), cert. denied, 272 So.2d 817 (Fla. 1973).
(3) The right (franchise) to provide utility services to the public carries a concomitant duty to promptly and efficiently provide those same services. See, 73B C.J.S., Public Utilities, § 2 (1983).
(4) The right (franchise) to provide utility services to the public in a franchised territory is inherently subject to, and conditional upon, the ability of the franchise holder to promptly and efficiently meet its duty to provide such services. Section 367.045(5)(a), Florida Statutes.
(5) When a public service entity, whether governmental or private, has a prior (earlier acquired) legal right to provide services in a particular territory but does not have the present ability to promptly and efficiently meet its duty to do so, the public is entitled to be served by some other public service entity which does have the present ability to provide the needed service although the legal claim of right of the second entity to provide such services is secondary in time priority to the prior legal right of the entity without the ability.[3]
(6) When each of two public service utility entities, whether governmental or private, have a legal basis for the claim of a right to provide similar services in the same territory and each has the present ability to promptly and efficiently do so, that entity with the earliest acquired (prior) legal right has the exclusive legal right to provide service in that territory without interference from the entity with the later acquired (subsequent) claim of right.
AFFIRMED.
GOSHORN, J., concurs.
HARRIS, J., dissents with opinion.
HARRIS, Judge, dissenting.
I would like to concur in the majority opinion because I believe that the regulatory scheme devised by the trial court and approved by the majority is fairer than the one enacted by the legislature. Under the majority's water and wastewater system plan, the franchisee is given an exclusive area which cannot be encroached upon by anyone so long as it services or is capable *226 of servicing the area. Unfortunately the legislative plan is different and I believe controls.
Under chapter 367 there is no authority for the Public Service Commission to grant an exclusive franchise area. The certificate in this case does not purport to grant an exclusive franchise area. The commission grants exclusivity by limiting the number of franchises in any given area. Therein, of course, lies the problem. A governmental agency, such as appellant, is exempted from the jurisdiction of the Public Service Commission in supplying water and sewer services within its corporate limits. The subject property has now been annexed at the request of the property owner and is part of the municipality. The municipality may now serve the area without a permit from the Public Service Commission. If it is to be prohibited from proceeding to provide service, it must be under the strictures of section 180.06.
To preclude appellant under this section, appellee must be actually operating within or adjacent to the annexed area. Such has not been shown in this record. Ability or capacity to operate in or adjacent to the annexed area is not sufficient, under this statute, to deny the municipality the right to extend its water and sewer lines.
The majority believes, as I do, that one who makes an investment in reliance on a certificate deserves economic protection.[1] To provide this protection the majority recognizes an exclusive franchise area. This, however, permits the Public Service Commission, by granting a service area to a private company, even within the municipality,[2] to exclude future municipal development. This indirectly permits the Public Service Commission to regulate the service and service area of the municipality contrary to the express exemption contained in the statute.
I would REVERSE.
NOTES
[1] In City of Winter Park v. Southern States Utilities, Inc., 540 So.2d 178 (Fla. 5th DCA 1989), this court held that where a city did not have the present ability to serve the public the city had no legal right to prevent a private company certified to provide services to an area within the city's territorial limits, from serving the public where the private company had the present capability to provide services.
[2] Section 367.011(2), Florida Statutes, provides:

The Florida Public Service Commission shall have exclusive jurisdiction over each utility with respect to its authority, service and rates.
[3] City of Winter Park v. Southern States Utilities, 540 So.2d 178 (Fla. 5th DCA 1989).
[1] I urge that this protection should come from the legislature.
[2] § 367.021(10), Fla. Stat. (1989).