713 So.2d 429 (1998)
TOWN OF JUPITER, Appellant,
v.
VILLAGE OF TEQUESTA, Appellee.
No. 97-2846.
District Court of Appeal of Florida, Fourth District.
May 27, 1998.
Certification Denied July 7, 1998.
*430 Phillip C. Gildan, Susan Fleischner Kornspan and Teresa J. Moore of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., West Palm Beach, and Thomas J. Baird of Thomas J. Baird, P.A., North Palm Beach, for appellant.
Scott G. Hawkins of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellee.
FARMER, Judge.
In 1976 the Village of Tequesta (Tequesta) owned and operated its own fresh water supply system. To meet its needs and to ensure a supply of sufficient water for its customers, Tequesta entered into a 30 year "Bulk Sale Water Service Agreement" with a private company, Tri-Southern Utilities Co. Under this agreement, the company would supply Tequesta with up to 2 million gallons per day (MGD) of potable water; and Tequesta agreed to buy at least 1.5 MGD. The company was obligated to deliver the water to Tequesta at a "point of delivery," which is a specific location where the water supplied would enter Tequesta's municipal water system and mingle with its own water and therefrom be distributed to its consumers.
In 1978, the Town of Jupiter (Jupiter) purchased Tri-Southern and assumed all of its rights and responsibilities under the contract. After this acquisition of Tri-Southern, both Jupiter and Tequesta reaffirmed the water service contract and agreed to be bound by it.
Tequesta intends to construct a reverse osmosis water treatment facility which would expand its ability to create its own potable water and eventually end its reliance upon water from Jupiter's facility. Tequesta would honor its water service contract with Jupiter until the contract terminates in the year 2007. Jupiter brought this suit and sought to enjoin Tequesta from the intended expansion of its facility, relying upon a Florida statute that inhibits the duplication of such facilities within the same municipal service area.[1] Essentially, Jupiter alleged that the construction of the reverse osmosis expansion would improperly duplicate and compete with its own fresh water facilities. Jupiter claimed that under section 180.06 Tequesta was required to obtain its consent before expanding its water treatment facility.
Both parties filed cross motions for summary judgment. The trial court determined that the issue was whether Jupiter and Tequesta constitute separate consumer territories. The court found that both parties operate their own separate fresh water systems and that Tequesta's consumer territory was within the municipal limits of the Village of Tequesta. The court found that Tequesta entered into the bulk agreement with Jupiter's predecessor in order to serve Tequesta's consumer territory, not that of Jupiter. The court held that in entering into the contract that Tequesta did not give up its water supply autonomy within its borders or the right to service its territory by any other means if it chose to do so. The trial court then granted Tequesta's motion for summary judgment, finding that Jupiter had no standing to challenge Tequesta's right to construct the reverse osmosis facility.
Section 180.06 provides in pertinent part that:
"a ... municipality shall not construct any system, work, project or utility authorized *431 to be constructed hereunder in the event that a system, work, project or utility of a similar character is being actually operated by a municipality ... in the municipality or territory immediately adjacent thereto, unless such municipality or private company consents to such construction."
Jupiter contends that its bulk agreement amounts to operation within Tequesta and that, under this provision, the planned expansion by Tequesta requires its consent.
But there is no evidence in the record that Jupiter is actually operating a system, work, project or utility within the Village of Tequesta where the proposed expansion will be operated. Under the bulk agreement, Jupiter merely supplies Tequesta with bulk potable water at a point of delivery. Under the bulk agreement, the point of delivery is the place at which Tequesta assumes responsibility for the potable water and thence distributes it to its own customers. Jupiter neither hooks up nor disconnects any customers within Tequesta; it has no pumps or meters within Tequesta; it reads no customer meters there; it sends no bills there; indeed it has no contact of any kind in Tequesta with any consumer of potable water.
All of the fresh water sold by Jupiter to Tequesta is in bulk which is then sold by Tequesta to consumers within its service area. Providing Tequesta with bulk potable water at a point of delivery does not, in our opinion, constitute actual operation by Jupiter within Tequesta's consumer service area. The record establishes without contradiction that Jupiter is therefore not actually operating within the area serviced by Tequesta. Ortega Utility v. City of Jacksonville, 564 So.2d 1156 (Fla. 1st DCA 1990) (section 180.06 prohibits only direct encroachment by one utility provider into an operating area already served by another); City of Mount Dora v. JJ's Mobile Homes Inc., 579 So.2d 219 (Fla. 5th DCA 1991).
AFFIRMED.
STONE, C.J., and GROSS, J., concur.
NOTES
[1] § 180.06, Fla. Stat. (1997).