DAUKSCH, J.
This case arose when appellant, Lake Utility Services (LUS), filed a complaint against appellee, City of Clermont (Clermont), for declaratory and injunctive relief. LUS alleged in its complaint that it had the exclusive right to provide water service to several areas in Lake County pursuant to certificate number 496-W. It alleged that in 1992, it filed an application with the Florida Public Service Commission (FPSC) to extend its certificated service area in the county. Cler-mont initially filed an objection but withdrew it one week before the final hearing on the matter. On November 24, 1992, the FPSC granted LUS’s application.
LUS alleged also that upon discovering that Lennar Homes, Inc. (Lennar) was going to develop a portion of property within its certificated territory, it advised Lennar of its exclusive right to provide water service to the development. However, Clermont also advised both Lennar and LUS that Lennar was required to use its water service in order to obtain development approval. LUS maintained that it was presently operating a water utility within its certificated territory and that it had the required permits and the ability to provide such service to Lennar’s development, as evidenced by the FPSC’s previous approval of its application to extend its service boundaries. It alleged further that Clermont was prohibited from providing water service to Lennar by section 180.06(9), Florida Statutes (1991).
LUS alleged finally that it would suffer irreparable injury if Clermont were permitted to encroach upon its certificated area. Additionally, any damages sustained would be speculative. LUS maintained that even if it prevailed, it could lose the ability to serve those customers within its certificated territory. Accordingly, it sought a declaratory judgment determining that it had the exclusive right to provide water service within its certificated territory and an injunction prohibiting Clermont from encroaching upon its territory.
Clermont filed an answer to LUS’s complaint denying that LUS had the exclusive right and ability to provide water service to the subject area, including Lennar’s development. As an affirmative defense, Clermont alleged that its utilities district had been created on February 25, 1992, pursuant to chapter 180 of the Florida Statutes and upon the enactment of ordinance 273-C. It alleged that the ordinance had established the district boundaries, authorized the extension of city utilities within the district based upon its *986 water works and sewer ordinances and required all individuals or corporations living or doing business within the district to connect to the city’s water and wastewater system when available. Clermont maintained that the ordinance had become effective approximately eight months before the FPSC had granted LUS’s application to extend its certificated territory. Additionally, the ordinance pertained to the area in which Len-nar’s development was located. Clermont alleged that it was ready, willing and able to provide water service to the development. Finally, it alleged that the FPSC had no jurisdiction over governmental utilities. Accordingly, Clermont sought a declaratory judgment declaring that it had the exclusive right to provide water service to Lennar’s development. It also sought a denial of LUS’s petition for injunctive relief.
Attached to Clermont’s answer was a copy of ordinance 273-C. The ordinance reads in relevant part as follows:

CITY OF CLERMONT

CODE ORDINANCE
NO. 273-C
AN ORDINANCE PURSUANT TO CHAPTER 180, FLORIDA STATUTES (1989) CREATING A CITY OF CLER-MONT UTILITIES SERVICE DISTRICT; ESTABLISHING THE BOUNDARIES OF THE DISTRICT; AUTHORIZING THE EXTENSION OF MUNICIPAL UTILITIES WITHIN THE DISTRICT BASED ON THE CITY OF CLERMONT WATERWORKS AND SEWER ORDINANCE; REQUIRING ALL PERSONS OR CORPORATIONS LIVING OR DOING BUSINESS WITHIN THE DISTRICT TO CONNECT TO THE CITY WATER AND WASTEWATER SYSTEM WHEN AVAILABLE; PROVIDING AN EFFECTIVE DATE.
WHEREAS, the City of Clermont owns and operates a central water distribution system and a central wastewater collection system and treatment facility; and
WHEREAS, the City’s utility systems are capable of delivering water and waste-water utility service to areas outside the municipal limits of the City; and
WHEREAS, Chapter 180, Florida Statutes (1989) authorizes municipalities to extend their water and wastewater utilities beyond their municipal limits to provide utility services to unincorporated areas within the general vicinity of the municipality; and
WHEREAS, Section 180.02(3), Florida Statutes (1989) authorizes municipalities to create a utility zone for up to five (5) miles from the corporate limits of the municipality and further authorizes municipalities to require customers in that area to connect to the municipal wastewater system, when available; and
WHEREAS, the extension of water and wastewater systems by the City of Cler-mont within the subject utility district is environmentally sound and avoids costly duplication of infrastructure,
THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CLERMONT, FLORIDA:
Section 1. Creation of District. There is hereby created the City of Clermont Utilities Service District (hereinafter referred to as the “District”).
Section 2. District Boundaries. The District shall have the following boundaries:
[[Image here]]
Section 3. Extension of Utilities Authorized. The City is authorized and empowered to extend its water and waste-water utilities, including utility line, lift stations, booster pumps, wells, and storage tanks, to all areas within the District. All such utility extensions shall be governed by and be pursuant to the City of Clermont Water and Wastewater Ordinance (Ord. No. 239-C, et seq.)
Section b. Connection to Wastewater System Required; Exceptions. All persons or corporations developing property (either commercial, industrial, institutional or residential) after the effective date of *987 this Ordinance within the District shall be required to immediately connect to the City wastewater system, where available. Except for: 1) single-family dwelling units in existence on the date of this Ordinance, and 2) wastewater customers service by a private wastewater utility certificated by the Florida Public Service Commission, all persons or corporations living or doing business within the District as of the effective date of this Ordinance shall be required to connect to the City wastewater system within 180 days of when it becomes available. For purposes of this Ordinance, wastewater shall be deemed “available” as provided in Section 10D-6.52(7), F.A.C., which Section is hereby incorporated by reference.
Section 5. Utilities of Similar Character Prohibited, Except as otherwise provided by law, no private or public utility shall be authorized to construct within the District any system, work, project or utility of a similar character to that being operated in the District by the City unless the City consents to such construction.
Section 6. Accomplishment and Regulation of Utility Zone. Any property annexed into the. City of Minneola will be deleted from the City of Clermonts [sic] Utility Service District.
Section 7. Effective Date. This Ordinance shall take effect immediately upon its final adoption by City Council.
First Reading this 14th day of January 1992.
Second Reading this 25th day of February, 1992.
PASSED AND OBTAINED BY THE CITY COUNCIL OF THE CITY OF CLERMONT, LAKE COUNTY, FLORIDA THIS 25th DAY OF FEBRUARY, .1992.
LUS filed a reply to Clermont’s answer and affirmative defense in which it alleged that its certificate took priority over ordinance 273-C, particularly when Clermont had voluntarily submitted the service area dispute to the FPSC for a determination. It maintained that the FPSC’s resolution of the matter was res judicata.
Both parties filed motions for summary judgment. The only additional information contained in Clermont’s motion is that Len-nar’s development had been annexed into its city limits by the enactment of ordinance 323-M on November 26, 1996. Clermont also alleged that 403.7 acres[1] of the 1,288.6-acre development was in LUS’s service area and that the remainder was in its city limits.
The record also contains an affidavit by Donald Rasmussen, LUS’s President, in which he explained that LUS filed its application with the FPSC in 1992 to extend its certificated service area in the county because, sixty potable county water wells south of the city had been identified in 1990 as containing contaminated ethylene dibromide. After Clermont determined that it was not feasible for it to provide water service to the homes, LUS agreed to do so.
A hearing was held after which the trial court entered an order in favor of Clermont. The court reasoned in part as follows:
1. At issue in this matter is which of the above parties has the exclusive right to serve water utilities to a certain territory located in Lake County, Florida.
2. On February 25, 1992, the Defendant passed ordinance No. 273-C (exhibit A) extending both its water and waste-water utility service beyond its corporate boundaries to include the territory in question. Also included in the ordinance was a clause prohibiting any other utility from operating any water or wastewater utility without the consent of the City.
3. On November 24, 1992, the Plaintiff was granted by the Florida Public Service Commission the franchise rights to service water to an area of land in Lake County which also included the subject territory. See Exhibit B.
4. The Plaintiff has filed suit seeking declaratory judgment to determine their *988 rights and injunction to prevent irreparable harm.
5. In Florida, two governmental entities have separate but concurrent jurisdiction over utility franchise rights. The Florida Public Service Commission has the power to award utility franchises to private and public utilities, and individual municipalities have the power to create utility zones for their exclusive service. See Chs. 180 & 367, Fla. Stat. (1991). Neither entity has authority over the other, and neither entity may interfere with franchise zones created by the other. City of Mount Dora v. JJ’s Mobile Homes, Inc., 579 So.2d 219, 225 (Fla. 5th DCA 1991).
6. When there is a conflict between a utility and a municipality over franchise rights, as there is in the above cause, it must be determined which party has the earlier acquired right and whether that party has 'the present ability to promptly and efficiently service the franchise area. Id. The City of Clermont’s ordinance no. 273-C has the earliest date of any document in evidence and indicates that the City attempted to secure the area in question for utility service first. It must be determined whether that ordinance meets the requirements of the statutes [sic]
7. Section 180.06(3), Florida Statutes, states that a municipality has the power to supply water. Section 180.02(2), Florida Statutes, states that a municipality has the power to extend any of its powers beyond its corporate limits provided such is not extended into the corporate limits of another municipality. Section 180.06(9) prohibits- one utility from encroaching upon an area already served by another without their consent. Also Ortega Utility Co. v. City of Jacksonville, 564 So.2d 1156 (Fla. 1st DCA 1990).
8. As stated above, the ordinance in question extends it [sic] power to supply water and prohibits any other utility from operating similar services in the zone without the city’s consent. The Court finds that the ordinance does not violate the statutes and is valid. Because the ordinance was first-in-time, the City satisfies the first prong of the JJ’s Mobile Homes test.
9. Next it must be determined whether the City has the present ability to serve the area with efficient and prompt service. At the motion for summary judgment, both parties stipulated that each has the present ability to service water to the area. Based on that stipulation, the Court finds that the City of Clermont has the proper right to service water utilities to the area at issue.
10. The Court reserves jurisdiction to resolve any ancillary matters related to this cause, [footnotes omitted].
We reverse. Both parties agree that the entity, whether governmental or private, which first acquired the legal right to provide water service to the subject area and which has the ability to do so is the entity with the exclusive legal right to do so. The controlling principle of law is set forth in this court’s decision in City of Mount Dora v. JJ’s Mobile Homes, Inc., 579 So.2d 219 (Fla. 5th DCA 1991) as follows:
... When each of two public service utility entities, whether governmental or private, have a legal basis for the claim of a right to provide similar services in the same territory and each has the present ability to promptly and efficiently do so, that entity with the earliest acquired (pri- or) legal right has the exclusive legal right to provide service in that territory without interference from the entity with the later acquired (subsequent) claim of right.
Id. at 225. The parties dispute, however, which entity acquired the exclusive legal right to provide water service to the subject area first.
Section 180.02(2), Florida Statutes (1991) is the controlling statute in this case. That statute reads as follows:
180.02 Powers of municipalities.—
*989 [[Image here]]
(2) Any municipality may extend and execute all of its corporate powers applicable for the accomplishment of the purposes of this chapter outside of its corporate limits, as hereinafter provided and as may be desirable or necessary for the promotion of the public health, safety and welfare or for the accomplishment of the purposes of this chapter; provided, however, that said corporate powers shall not extend or apply within the corporate limits of another municipality.
In State v. City of Pensacola, 143 Fla. 823, 197 So. 520 (1940), the supreme court held that the predecessor to the foregoing statutory provision authorized a municipality to extend its water service beyond its city limits. The court reasoned in part as follows:
It is admitted that the City is authorized to issue water revenue certificates for the purpose of improving and extending its water supply and distribution system within the City limits. It is also admitted that if the City has power to extend its water distribution system into areas adjacent to but outside the City that it has power to issue water revenue certificates for that purpose, so the only question we are concerned with here is the authority of the City to extend its water works system into the unincorporated area of Brownsville and West Pensacola adjacent to but beyond the limits of the City.
Chapter 17118, Acts of 1935, was designed to promote the public health, safety, and welfare of all municipalities by the construction of water works system, sewage systems, garbage collection, and garbage disposal plants. Section 1(e) of said act authorizes any municipality ‘to extend and execute all of its corporate power applicable for the accomplishment of the purposes of this Act outside of its corporate limits, as hereinafter provided and as may be desirable or necessary for the promotion of the public health, safety and welfare or for the accomplishment of the purposes of this Act’. Other provisions of the act contribute to this general purpose as does Chapter 15425, Sp. Acts of 1931.
Id. at 823-824, 197 So. 520. See also State v. City of Riviera Beach, 397 So.2d 685 (Fla.1981) (citing Pensacola for a municipality’s exercise of extraterritorial powers); Hope v. City of Gainesville, 195 So.2d 849 (Fla.1967) (approving ordinance which allowed city of Gainesville to extend its water, sewer and electric distribution systems beyond its corporate limits); State v. City of Melbourne, 93 So.2d 371 (Fla.1957) (city had authority to build and extend its water distribution facilities to towns of Indialantie and Melbourne Beach and charge subscribers inside and outside of towns a higher water rate than those within corporate limits of Melbourne).
Municipalities are authorized to provide water for domestic, municipal or industrial uses. § 180.06(3), Fla. Stat. (1991). They may extend their corporate powers outside of their corporate limits as is desirable or necessary for the promotion of the public health, safety and welfare or for the accomplishment of the purposes of Chapter 180. § 180.02(2). Once a municipality proposes to exercise its powers, as provided for in Chapter 180, it shall pass a resolution or ordinance designating the utility to be extended and its purpose, the proposed territory, the mortgage revenue certificates or debentures deemed necessary, if any, the cost thereof and any other relevant provisions. § 180.03(1), Fla. Stat. (1991). An objection to any resolution or ordinance must be filed in writing with the municipality’s governing body and a hearing held within 30 days after its passage. § 180.03(2), Fla. Stat. (1991). Section 180.04, Florida Statutes (1991) sets forth the requirements for passing an ordinance or resolution pertaining to the construction of a utility or ah extension thereof.
In this case, Clermont passed ordinance 273-C for the express purpose of creating a utilities service district, establishing the boundaries therein, authorizing the extension of municipal utilities therein based upon its waterworks and sewer ordinance and requiring all entities doing business within the district to connect to its water and wastewa-ter system when available. The ordinance was passed on February 25, 1992. LUS did not object in writing to Clermont’s passage of the ordinance which gave it the right to extend its existing water and wastewater *990 utilities to occupants within the designated district boundaries. Because the FPSC did not grant LUS’s application to extend its certificated service area within the county until November 24, 1992, Clermont acquired its right to provide water service to the subject area first.
LUS contends that even if Clermont obtained the first right to provide water service to the subject area, it does not have a duty to do so. It maintains that Clermont should not be permitted to pick and choose its customers. Otherwise, private entities, such as itself, are at an unfair economic and competitive advantage. Because Clermont failed to avail itself of the opportunity to serve the subject area once it obtained the right to do so, LUS contends that the FPSC’s order granting its application to extend its certificated service area on November 24, 1992, without objection by Clermont, supersedes ordinance 273-C. LUS correctly contends that in JJ’s Mobile Homes, this court held that “[t]he right (franchise) to provide utility services to the public carries a concomitant duty to promptly and efficiently provide those same services.”[2] Id., 579 So.2d at 225.
Clermont contends in response that it has no statutory duty to provide water service to every customer located within its franchise. It contends that Chapter 180 gives it the discretion to “spend the taxpayers dollars to provide water services to remote residents outside the city.”
Clermont’s argument is without merit. The record shows that when Wayne Saunders, Clermont’s City Manager, proposed ordinance 273-C to the Clermont City Council, he explained that it did not obligate Cler-mont to provide water service to the subject area; rather, it merely reserved the right to do so to the city:
MR. POOL [Chairman and Mayor]: Okay. This would not, as I understand, obligate the City to provide water and sewer, it would merely reserve that option for the City to see if we could provide the water and sewer if requested—
MR. SAUNDERS: That’s correct—
MR. POOL: or if we should decide—
MR. SAUNDERS: It gives the, more or less gives the City the first shot at providing service out in that area if it’s needed. It does not say that someone else will not provide the service....
* * *
MR. POOL: Good. I wanted to make that clear so people understood we were not — it’s not mandatory that we service this area. It leaves us that opportunity to take a look and we’re not obligated to provide water and sewer, but the opportunity to see if we could provide the water and sewer.
At the summary judgment hearing, Clermont clarified that ordinance 273-C gave it “the first option to provide [water] service.”
Clermont initially declined to provide water service to sixty potable county water wells south of the city which had been identified in 1990 as containing contaminated ethylene dibromide because it was not feasible for it do so. Thus, LUS filed its application with the FPSC in 1992 to extend its certificated service area so it could service the homes. Clermont did not object to LUS’s application on the ground that it had a preexisting legal and exclusive right to do so. Relying upon the FPSC’s order, LUS expended time and money to construct and operate a water utility in the area. Under these circumstances, Clermont should not be permitted to now provide water service to Lennar because it is economically feasible and profitable for it to do so, more than five years after it first obtained the right to do so.
In JJ’s Mobile Homes, this court explained why section 180.06(9), Florida Statutes (1991) prohibits a private company or municipality from building a water utility in an area adjacent to an area in which one is already operating:
The restriction of the statute was designed to avoid the wastefulness of duplicate capital investments for competing utilities that could not likely be operated without financially jeopardizing each oth *991 er’s operating revenues if erected in the same consumer territory, [citations omitted].
Id.,Id., 579 So.2d at 223. See also § 367.045(5), Florida Statutes (1991).[3] Although Clermont acquired its right to provide water service to the subject area first, its failure to exercise its concomitant duty to promptly and efficiently provide those services resulted in a waiver of the right to do so.[4] Because this issue is dispositive of the appeal, LUS’s remaining arguments need not be discussed.
REVERSED.
WHITEHEAD, R., Associate Judge, concurs.
HARRIS, J., concurs specially with opinion.

. That area, included within LUS's certificated area extended by the FPSC, is the subject of this appeal.

. Section 367.111(1), Florida Statutes (1991) requires utilities to provide service to the territory described in its certificate of authorization within á reasonable time.

. 367.045 Certificate of authorization; application and amendment procedures.—
[[Image here]]
(5)(a) ... The commission may not grant a certificate of authorization for a proposed system, or an amendment to a certificate of authorization for the extension of an existing system, which will be in competition with, or a duplication of, any other system or portion of a system, unless it first determines that such other system or portion thereof is inadequate to meet the reasonable needs of the public or that the person operating the system is unable, refuses, or neglects to provide reasonably adequate service.

. The right to provide a utility .service is conditioned upon the ability to be able to do so. See JJ’s Mobile Homes, 579 So.2d at 225. LUS’s President stated in an affidavit that his company had the ability to provide water service to the subject area.